UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHILPI MUKHERJEE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendant. | Case No. 20-cv-676 (CRC) |

### MEMORANDUM OPINION

Plaintiffs are fifty-three individuals who have applied to U.S. Citizenship and Immigration Services ("USCIS") to extend their nonimmigrant statuses and/or work authorizations. They claim that USCIS has unreasonably delayed the adjudication of their applications and that the delay constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"). Am. Compl. ¶¶ 270–305 (Causes of Action). Last month, in a case brought by a group of plaintiffs asserting identical claims, this Court denied as moot the claims of those plaintiffs whose applications had been adjudicated during the pendency of the lawsuit and then transferred the claims of the remaining plaintiffs to the judicial districts where the USCIS service centers that were adjudicating their individual applications are located. See Pasem v. USCIS, No. 20-cv-344, 2020 WL 2514749 (D.D.C. May 15, 2020) (CRC). The plaintiffs in this case offer no reason to deviate from that tack. The Court will therefore transfer the seven live claims to the more appropriate judicial district.

**I.  Background**

In Pasem, the Court fully laid out the statutory and procedural history relevant to this case. See id. at *1–2. Briefly, plaintiffs are dependents of people who have been granted nonimmigrant visas and work authorizations for either being an employee in a "specialty occupation" (H1-B visa) or a manager, executive, or employee with specialized knowledge (L-1

visa). 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1101(a)(15)(L). As dependents of the primary visa holders, plaintiffs may apply for derivative nonimmigrant status and work authorization. 8 U.S.C. § 1101(a)(15)(H), 1101(a)(15)(L), 1184(c)(2)(E); 8 C.F.R. § 214.2(h)(9)(iv) (Jan. 1, 2020). Prior to March 2019, derivative applications "were adjudicated as a single package alongside the primary H1-B or L-1 applications." Pasem, 2020 WL 2514749, at *2. But now, USCIS requires derivative applicants to provide biometric information for screening, which "has predictably extended the amount of time it takes USCIS to adjudicate the applications and has prevented USCIS from continuing to consider the derivative visas concurrently with the primary applications." Id. The resulting delays, plaintiffs claim, are arbitrary and capricious. Plaintiffs do not challenge the legality of the biometrics policy itself; instead, they simply challenge "the Agency's (in)action due to" that policy, among other factors that may result in delays in USCIS's review of their applications. Pls.' Opp. 17.

## II.    Mootness

Before transferring any claims, the Court will again dismiss as moot the claims of those plaintiffs whose applications have been adjudicated since this suit was filed. As the Court explained in Pasem:

> When warranted, courts in this district routinely dismiss individual claims prior to transferring a case. [citing cases] . . . Claims that have become moot must be dismissed for lack of subject matter jurisdiction. Mittleman v. Postal Regulatory Comm'n, 757 F.3d 300, 303 (D.C. Cir. 2014); Fed. R. Civ. P. 12(b)(1). In deciding whether a claim has become moot, a court may "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

2020 WL 2514749, at *5. Relying on evidence submitted by USCIS, the Court finds that the claims of 46 plaintiffs are moot and will dismiss those claims. See Def's Reply App'x A, ECF No. 15-4.

### III.     Transfer

Seven plaintiffs are still awaiting adjudication of their applications. Each of the remaining plaintiffs has an application pending at USCIS's Texas Service Center, which is located in the Northern District of Texas.[1] The Court will grant USCIS's motion to transfer these plaintiffs' claims to that district for the same reasons it transferred the live claims in Pasem. First, there is no dispute that plaintiffs "could have brought" this action "in the judicial districts where the service centers are located" because that is "where the decisionmaking process occur[s]." Pasem, 2020 WL 2514749, at *3 (quoting Gyau v. Sessions, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018)).[2] The only question that remains then is whether plaintiffs should have brought their suit there. Gyau, 2018 WL 4964502, at *1; see also 28 U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in the interest of justice," a court may transfer a civil action to any other district as long as the transferee district is one where the case "might have been brought."). This inquiry requires the Court to weigh whether the transfer "is in the public interest and in private interest of the parties." Pasem, 2020 WL

---

[1] One plaintiff, Saranya Chandrasekaran, has an application pending at both the Texas Service Center (I-539) and the Vermont Service Center (I-765). In the interest of judicial economy, the Court will transfer both of her claims together to the Northern District of Texas. Although doing so is somewhat in tension with the Court's conclusion that efficiency and convenience dictate transferring all claims to the districts where plaintiffs' applications are being adjudicated, splitting a single plaintiff's nearly identical claims between two different districts across the country would be more inconvenient for both parties. The transferee court may of course revisit this decision if necessary.

[2] Plaintiffs argue that venue is proper in this district because the policies that affected their individual delays were made in the District of Columbia. Pls.' Opp. 16–18. But as explained in Pasem, the question for transfer is not whether venue is proper here, it is whether venue is more appropriate elsewhere. A court may transfer venue to a more convenient district, even if it is proper in the district in which the plaintiff brought the suit. Pasem, 2020 WL 2514749, at *3 (citing Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49 (2013)).

2514749, at *3 (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988). As the Court explained in detail in Pasem, those factors weigh in favor of transfer. Id. at 3–4.

Plaintiffs fail to directly confront the Court's decision in Pasem but do make a handful of arguments that address its reasoning and bear brief discussion. First, plaintiffs contend that USCIS has failed to satisfy its burden to provide "specific names of witnesses or any specific evidence that would benefit from this 'convenience.'" Pls.' Opp. 19. Relatedly, plaintiffs argue that, as an APA case, there is no evidence to gather from the service centers because judicial review is based solely on the administrative record. Id. at 22. These are odd arguments given that plaintiffs themselves have more than once stressed a need for discovery, including depositions of the directors of the various service centers. See Am. Compl. ¶ 286 ("Plaintiffs demand discovery from Defendant to develop the administrative record, [including] requests for production, interrogatories, and depositions."); Def.'s Reply 2 & n.2 (noting that, as of June 19, 2020, plaintiffs informed defendant that it intends "seek discovery on the causes of USCIS's processing times," explaining that "unreasonable delay claims are not record review claims."). Because plaintiffs do not challenge the legality of the biometrics policy itself,[3] "the evidence of how it has affected each plaintiff is best available at the service center where they submitted their

---

[3] In their briefing, plaintiffs allude to allegations that the biometrics policy is being implemented in bad faith in order to achieve the Trump Administration's purported goal to end these derivative nonimmigrant statuses altogether. See, e.g., Pls.' Opp. 24 n.22. But the causes of action alleged in their Amended Complaint do not challenge the legality of the policy itself; they only challenge its implementation and effect on these particular applicants. See Am. Compl. ¶¶ 270–305; see also Pls.' Opp. 17 (explaining that they are challenging "the Agency's (in)action due to" the biometrics policy). In any case, even if some evidence regarding the implementation of the biometrics policy might be found in D.C., as plaintiffs' discovery demands reveal, much of the evidence bearing on the delay will be specific to the relevant service center.

applications." Pasem, 2020 WL 2514749, at *4; see also id. (explaining that "[w]hen 'the *implementation* of [a] policy is at issue, and [] that implementation took place [in a different judicial district], venue is more appropriately laid in [the other district].'" (quoting Huskey v. Quinlan, 785 F. Supp. 4, 7 (D.D.C. 1992) (emphasis in original))).

Second, plaintiffs take umbrage with the Court's finding that the interest in having "localized controversies decided at home" weighs in favor of transfer. Pls. Opp. 19–21. They contend that this local interest only exists when the challenged action "involves the use of or consequences to land, which is inherently localized" or "where the local population is affected by the controversies giving rise to the case." Id. at 19–20. While plaintiffs have marshaled several cases in which this interest was noted in actions involving land and one about the effect on local populations, they offer no authority establishing that it is present *only* in those situations. Indeed, courts in this district, including this one, have held that the interest in having localized controversies decided at home extends to "controversies requiring judicial review of an administrative decision." Gyau, 2018 WL 4964502, at *1 (applying this interest in a case seeking the reversal of USCIS's denial of one plaintiff's petition sponsoring the other for lawful permanent residency). While this localized interest may not be as strong as in cases involving land, it nonetheless applies here. Regardless, the other interests favoring transfer—namely, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence—still weigh so heavily toward transfer that removing the interest in having localized controversies decided at home would not change the calculus.

### IV.    Conclusion

For the foregoing reasons, the Court will grant USCIS's motion to dismiss as moot the claims of plaintiffs whose visa or work authorization applications have been adjudicated as of the

date of this opinion.  The Court will then transfer the remaining seven plaintiffs' claims to the Northern District of Texas.

Date: <u>June 24, 2020</u>

                                                  CHRISTOPHER R. COOPER
                                                  United States District Judge